**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION (COLUMBUS)**

| | |
|---|---|
| JACQUELYN CARPENTER<br>425 Westwood Dr.<br>Steubenville, OH 43953<br><br>  Plaintiffs,<br><br>  v.<br><br>SOUTHERN AIRWAYS EXPRESS<br>c/o Statutory Agent<br>101 N. Riverside Dr., Suite 211<br>Pompano Beach, FL 33062<br><br>**Serve Also:**<br><br>  SOUTHERN AIR TRANSPORT, INC.<br>  c/o CT Corporation System (Stat. Agent)<br>  4400 Easton Commons Way, Suite 125<br>  Columbus, OH 43219<br><br>  -and-<br><br>ROB MCKINNEY<br>c/o Southern Airways Express<br>101 N. Riverside Dr., Suite 211<br>Pompano Beach, FL 33062<br><br>  -and-<br><br>SUSAN NEFF<br>c/o Southern Airways Express<br>101 N. Riverside Dr., Suite 211<br>Pompano Beach, FL 33062<br><br>  Defendants. | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

Plaintiff Jacquelyn Carpenter ("Carpenter"), by and through undersigned counsel, as her Complaint against the Defendants, state and aver the following:

## PARTIES

1. Carpenter is a resident of the city of Steubenville, Jefferson County, state of Ohio.

2. Defendant SOUTHERN AIRWAYS EXPRESS ("Southern Airways") is a foreign-incorporated, for-profit company from the state of Florida that conducts business within the state of Ohio.

3. Southern Airways is, and was at all times hereinafter mentioned, Carpenter's employer within the meaning of Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 *et seq*. and R.C. § 4112.01(A)(2).

4. Defendant Rob McKinney ("McKinney") is a resident of the state of Hawaii, upon information and belief.

5. McKinney was, at all times hereinafter mentioned, an individual who was the President of Pacific Operations at Southern Airways who acted directly or indirectly in the interest of Southern Airways and/or within the scope of McKinney's employment.

6. Southern Airways employed McKinney in the position of President of Pacific Operations.

7. McKinney was, at all times hereinafter mentioned, an employer within the meaning of R.C. § 4112.01 *et seq*.

8. McKinney made, and/or participated in, the adverse actions asserted, herein.

9. Defendant Susan Neff ("Neff") is a resident of the state of Tennessee, upon information and belief.

10. Neff was, at all times hereinafter mentioned, an individual who was a Chief Executive Officer at Southern Airways who acted directly or indirectly in the interest of Southern Airways and/or within the scope of Neff's employment.

11. Southern Airways employed Neff in the position of Chief Executive Officer.

12. Neff was, at all times hereinafter mentioned, an employer within the meaner of R.C. § 412.01 *et seq*.

13. Neff made, and/or participated in, the adverse actions asserted, herein.

## JURISDICTION & VENUE

14. During her employment, Carpenter worked from home on behalf of Southern Airways, thus the material facts herein occurred within the state of Ohio.

15. The events that give rise to the claims for relief in this Complaint occurred at Plaintiff's address (425 Westwood Drive, Steubenville, OH 43953) and at other Southern Airways locations.

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Carpenter is alleging a federal law claim under the FMLA.

17. This Court has supplemental jurisdiction over Carpenter's state law claims pursuant to 28 U.S.C. § 1367, as they are so closely related to their federal law claims that they form part of the same case and controversy under Article III of the United States Constitution.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS

### A. Overview

19. Carpenter is a former employee of Southern Airways.

20. At all times noted herein, Carpenter could fully perform the essential functions of her job, with or without reasonable accommodations.

21. Carpenter has Crohn's Disease, placing her within a protected class for her disability.

22. Carpenter worked for Southern Airways as a Tier 2 Customer Service Representative until Southern Airways terminated her employment.

23. Carpenter worked from Southern Airways from February 26, 2018 until her termination on December 5, 2019.

### B. Southern Airways had Notice of Carpenter's Disability Protected Class

24. Carpenter suffers from Crohn's disease.

25. Carpenter notified Southern Airways, specifically Call Center Manager, Diana Burke and Defendant Neff, of her condition when she was hired. This notice was thus imputed upon Southern Airways.

### C. Carpenter was a Fantastic Employee

26. In or around March 2019, Carpenter was promoted from a Tier I employee to a Tier II employee despite the eight other agents with seniority above her for the promotion.

27. In or around April 2019, Carpenter was awarded a $500 gift card bonus for getting the most bookings during a company-wide contest.

### D. Carpenter Experienced a Flare-Up of her Disability

28. In or around June 2019, Carpenter experienced a flare-up due to her Crohn's disease that made it impossible to return to work.

29. Carpenter had to call off work for two days in order to attend doctors' appointments.

30. Even though the Southern Airways call-off policy did not require doctor's notes when calling off work due to illness, Carpenter still provided her manager with a doctor's note.

31. When Carpenter tried to return to work on the third day, the flare-up put her in so much pain that she left very early that morning to return to the doctor.

32. Carpenter's doctor determined that they needed to run a myriad of tests.

33. Due to the tests and her condition continuing to worsen, Carpenter missed an additional two weeks of work.

34. Throughout those two weeks, Carpenter emailed Human Resource Representative, Judith Lyttle all her doctor's notes.

35. After a week's worth of testing and sending doctor's notes to Lyttle, Carpenter's doctor informed Carpenter that Lyttle had called their office to confirm Carpenter's illness and symptoms.

36. Carpenter's doctor informed Carpenter that they did not share any information because it would be a violation of HIPPA.

37. Carpenter's doctor further explained that after they refused to give Lyttle the information she was seeking, Lyttle became very aggressive and rude.

### E. Carpenter Made a Complaint to HR

38. On or around June 24, 2019, Carpenter made a complaint to HR concerning Lyttle's behavior. This was a protected complaint.

39. To supplement her complaint, Carpenter submitted a letter to HR from her doctor's office, memorializing Lyttle's request and aggressive demands for the office to violate HIPPA.

40. Carpenter never received a response to the complaint.

### F. McKinney Ensured Carpenter That Her Job was Secure.

41. On or around June 24, 2019, McKinney emailed Carpenter informing her that Southern Airways was no longer keeping Tier II employees within the Call Center.

42. Confused, Carpenter emailed McKinney, asking that if Tier II employers no longer existed within her department, what her current role was.

43. McKinney assured her that while the situation was not ideal, she would keep her seniority and position, just as a Tier I employee.

### G. Carpenter Spoke with Burke to Discuss a Potential Write-Up

44. In or around June 2019, Carpenter spoke with Burke about a potential write-up for not offering a customer an interline passenger ticket.

45. During the discussion, Carpenter and Burke listened to a recording of the phone conversation in question.

46. The recording revealed that Carpenter had in fact offered the interline passenger ticket to the customer, but that the customer had cut her off.

47. Burke apologized for wasting Carpenter's time and concluded that Neff and McKinney must be out to get her.

### H. Southern Airways Refused to Verify Carpenter's Income, Instead Opting to Write Her Up for Insubordination

48. Shortly after Carpenter began the testing that her doctor recommended, she applied for Medicaid to help cover the costs of treatment.

49. In order to apply for Medicaid, applicants must verify their income.

50. Income verifications require a formal letter from an applicants' employer, on company letter head, memorializing her income.

51. This letter is then submitted to the federal government.
52. Carpenter reached out to management and HR representatives at Southern Airways to request that verification, but she was denied three times.
53. McKinney, who was one of the management employees receiving these requests, suggested that Carpenter print out the email chain of her requests to submit.
54. A printed email chain between supervisors and subordinates is wholly insufficient to satisfy the income verification requirement for a Medicaid application.
55. On her fourth attempt requesting the income verification, she included more information for McKinney explaining why printing out the email chain was not enough for her application.
56. Instead of providing the verification, McKinney responded that the tone of her email was "paramount to insubordination," and that if she continued, she would receive a write-up.
57. McKinney's response was a threat of discipline for requesting documentation necessary for Carpenter to receive medical care required for her to live a normal life, and thus was retaliatory.
58. In or around late June, Carpenter made a fifth and final request for income verification.
59. Southern Airways never sent the income verification and refused to correspond with Carpenter via email.
60. In or around July 2019, Carpenter received a write-up from McKinney for insubordination.
61. Carpenter responded to the write-up by asking that if McKinney was holding his pen to write her up, would he kindly write her income verification too?
62. Carpenter received a second write-up from McKinney for this comment.

### I. Carpenter Lost Access to Company Systems

63. In or around mid-June 2019, Carpenter lost access to the company emails.

64. Carpenter reached out to Southern Airways to ask why she was being denied access to her email account.

65. Southern Airways explained that it was within the company's right to take away her email.

66. Carpenter thought this was strange because Ashley Whitman, another customer service representative, used disability leave for her maternity and was not removed from Southern Airways emails.

67. This was an example of disparate treatment against Carpenter.

### J. Carpenter Reported McKinney and Neff for Harassment and Hostility Due to Her Disability

68. In or around July 2019, Carpenter's work environment deteriorated.

69. It was clear to Carpenter that McKinney and Neff were targeting her because of her medical issues and repeated leave from work due to her Crohn's Disease.

70. Carpenter reported the harassment and hostility to HR, a protected complaint.

71. HR conducted an investigation, and polled employees to determine whether they felt they worked in a hostile work environment.

72. Carpenter asked many of her co-workers whether they felt like they were working in a hostile work environment.

73. Many of her co-workers agreed that Carpenter was being harassment and targeted at work because of her Crohn's Disease.

## K. Southern Airways Did Not Permit Carpenter to Return to Her Job

74. Carpenter was set to return from medical leave on or around December 7, 2019.

75. On or around November 22, 2019, Carpenter reached out to Lyttle to confirm that Southern Airways was still expecting her on December 7, 2019.

76. Carpenter never received a response.

77. On or around November 25, 2019, Carpenter reached out again to Lyttle to ask the same question and again received no response.

78. On or around December 2, 2019, Carpenter called Lyttle instead of emailing her, again receiving no response.

79. On or around December 3, 2019, Carpenter received an email from Lyttle stating that Grant Beauchamp, Head of IT, would reach out shortly to help reinstate her corporate email.

80. Beauchamp contacted Carpenter on or around December 3, 2019 and got Carpenter's email back up and running.

81. Carpenter, excited to return to work after a difficult year of recovery, emailed Lyttle asking about the proper protocol for returning from disability leave.

82. Lyttle responded saying that McKinney would reach out to answer her question.

83. On or around December 4, 2019, Carpenter followed up with McKinney, once again asking about the proper protocol for returning to work from disability leave.

84. Carpenter further explained to McKinney that she wanted to confirm her work schedule so that she could confidently schedule her doctors appoints around work.

85. On or around December 5, 2019, McKinney informed Carpenter that she could not return to her position as a Customer Service Representative in the call center, but that there was another job available in another department with less pay and less hours.

86. Carpenter had taken protected medical leave (FMLA), which allows individuals to take time off work to properly recover.

87. Additionally, protected medical leave creates a legal obligation on the employer to maintain the employee's position (or a similar one) until they return to work.

88. It was completely unacceptable for Southern Airways to offer Carpenter an incomparable job for less pay and less hours.

89. Further, Carpenter had relied on McKinney's promise from around June 24, 2019 that her seniority and position were secure.

90. Southern Airways actions in this regard violated their legal obligation owed to Carpenter.

91. Carpenter emailed McKinney explaining that this offer was completely unacceptable and asked if Southern Airways would fight unemployment.

92. McKinney responded that he understood Carpenter's email to be her resignation, and that he accepted the resignation.

93. Carpenter did not resign.

94. Carpenter sent another email to McKinney, reiterating that it was impossible for her to resign from a position that did not exist.

95. Carpenter attempted to return to work, but Southern Airways by and through their agents made it impossible to do so without being forced into a completely different position that offered substantially less pay and hours.

96. As a result of Defendants' acts and omissions, Carpenter has and continues to suffer damages.

## COUNT I:  HOSTILE WORK ENVIRONMENT ON THE BASIS OF DISABILITY DISCRIMINATION

97. Carpenter restates each and every prior paragraph on this Complaint as if they were restated herein.

98. During her employment with Southern Airways, Carpenter was subjected to offensive and harassing conduct by McKinney and Neff based on her disability (a protected class).

99. Southern Airways knew or should have known of the harassing conduct against Carpenter by McKinney and Neff because Carpenter reported the discrimination to HR.

100. Southern Airways condoned, tolerated and ratified this harassing conduct.

101. This harassing conduct was severe and/or pervasive.

102. This harassing conduct was offensive to Carpenter.

103. This harassing conduct interfered with Carpenter's ability to perform her job duties.

104. Southern Airways' offensive and harassing conduct created a hostile and/or abusive work environment for Carpenter.

105. Southern Airways' offensive and harassing conduct created a hostile and/or abusive work environment for a reasonable person similarly-situated to Carpenter.

106. Carpenter suffered emotional distress as a result of Southern Airways' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

107. As a direct and proximate result of Southern Airways' conduct, Carpenter has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **COUNT II: DISABILITY DISCRIMINATION**

108. Carpenter restates each and every paragraph of this Complaint as if they were restated herein.

109. Carpenter suffers from Crohn's disease.

110. Carpenter is disabled.

111. In the alternative, Southern Airways perceived Carpenter as being disabled.

112. Carpenter's condition constituted a physical impairment.

113. Carpenter's condition substantially impaired one or more of her major life activities including working.

114. Southern Airways perceived Carpenter's condition to substantially impair one or more of her major life activities including working.

115. Southern Airways treated Carpenter differently than other similarly-situated employees (e.g. Ashley Whitman *supra*) based on her disabling condition.

116. Southern Airways treated Carpenter differently than other similarly-situated employees based on her perceived disabling condition.

117. On or about December 5, 2019, Southern Airways terminated Carpenter's employment without just cause.

118. The purported reason(s) for Carpenter's termination was pretext.

119. Southern Airways terminated Carpenter's employment based on her disability.

120. Southern Airways terminated Carpenter's employment based on her actual and/or perceived disability.

121. Southern Airways violated R.C. § 4112.02 when it discharged Carpenter based on her disability.

122. Southern Airways violated R.C. § 4112.02 when if discharged Carpenter based on her perceived disability.

123. Southern Airways violated R.C. § 4112.02 by discriminating against Carpenter based on her disabling condition.

124. Southern Airways violated § 4112.02 by discriminating against Carpenter based on her perceived disabling condition.

125. Carpenter suffered emotional distress as a result of Southern Airways' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

126. As a direct and proximate result of Southern Airways' conduct, Carpenter suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### **COUNT III: FAILURE TO ACCOMMODATE UNDER O.R.C. § 4112.01 *et seq.***

127. Carpenter restates each and every paragraph of this Complaint as if they were restated herein.

128. Carpenter informed southern Airways of her Crohn's disease: a disabling condition.

129. Carpenter requested accommodations from Southern Airways to assist with her disabilities including requesting an income verification page to apply for Medicaid.

130. Carpenter's requested accommodations were reasonable.

131. There was an accommodation available that would have been effective and would have not posed an undue hardship on Southern Airways.

132. Southern Airways failed to engage in the interactive process of determining whether Carpenter need an accommodation.

133. Southern Airways failed to provide an accommodation.

134. Southern Airways violated R.C. § 4112.02 by failing to provide Carpenter a reasonable accommodation.

135. Carpenter suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

136. As a direct and proximate result of Defendants' conduct, Carpenter suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV: RETALIATION IN VIOLATION OF THE FMLA
### (Defendant Southern Airways Only)

137. Carpenter restates each and every paragraph of this Complaint as if they were restated herein.

138. During her employment, Carpenter utilized FMLA leave.

139. After Carpenter utilized her qualified FMLA leave, Southern Airways retaliated against her.

140. Southern Airways retaliated against Carpenter by not offering Carpenter her job back and instead offering a job with different responsibilities, less hours, and less pay, and subsequently terminating her employment.

141. Southern Airways willfully retaliated against Carpenter in violating of U.S.C. § 2615(a).

142. As a direct and proximate result of Southern Airways' wrongful conduct, Carpenter is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT V: RETALIATORY DISCRIMINATION

143. Carpenter restates each and every paragraph of this Complaint as if they were restated herein.

144. As a result of Southern Airways' discriminatory conduct described *infra*, Carpenter complained about the harassment and hostility she was experiencing from McKinney and Neff.

145. Subsequent to Carpenter reporting the harassment and hostility from McKinney and Neff, Carpenter lost her access to her work email and was not permitted to return to her previous position after returning from FMLA leave.

146. Southern Airways' actions were retaliatory in nature based on Carpenter's opposition to the unlawful discriminatory conduct.

147. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

148. Carpenter suffered emotional distress as a result of Southern Airways' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

149. As a direct and proximate result of Southern Airways' retaliatory discrimination against and termination of Carpenter's employment, she suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**DEMAND FOR RELIEF**

WHEREFORE, Carpenter demands from Southern Airways the following:

(a) Issue an order requiring Southern Airways to restore Carpenter to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Carpenter for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorney's fees and non-taxable costs for Carpenter's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully Submitted

/s/ Matthew G. Bruce
Matthew G. Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
THE SPITZ LAW FIRM
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax: (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Jacquelyn Carpenter*

## **JURY DEMAND**

Plaintiff Jacquelyn Carpenter demands a trial by jury by the maximum number of jurors permitted.

/s/ Matthew G. Bruce<br>
Matthew Bruce (0083769)