UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JACQUELYN CARPENTER** | ) | CASE NO. 2:21-CV-00568 |
| | ) | |
| Plaintiff, | ) | JUDGE SARAH D. MORRISON |
| | ) | |
| v. | ) | Magistrate Judge Chelsea Vascura |
| | ) | |
| **SOUTHERN AIRWAYS EXPRESS,** *et al.*, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

## I.  INTRODUCTION

Defendants, Southern Airways Express, Rob McKinney, and Susan Neff's (collectively "SAE") are subject to this Court's jurisdiction because they have transacted business in Ohio, a substantial part of the events or omissions giving rise to Plaintiff Jacquelyn Carpenter's claims occurred in Ohio, and jurisdiction over SAE would not violate Due Process.  Furthermore, venue is proper in this Court under 28 U.S.C. § 1391 since this Court holds personal jurisdiction over SAE.

## II.  FACTUAL BACKGROUND

Carpenter was employed by SAE as a Tier II Customer Service Representative from February 26, 2018, until her termination on December 5, 2019.  (Compl. ¶¶ 14, 22-23).  SAE knowingly hired Carpenter while she was residing in Ohio.  (*Id.*).  In March 2019, Carpenter was promoted from a Tier I employee to a Tier II employee despite eight other agents with seniority above her for the promotion.  (*Id.* ¶ 26).  In April 2019, she was awarded a bonus for being the employee with the most bookings during a company-wide contest.  (*Id.* ¶ 27).  In June 2019, Carpenter

experienced a flare-up due to her Crohn's Disease and had to call off for two days to attend necessary doctor's appointments. (*Id.* ¶¶ 28-29). SAE's policy did not require a doctor's note when calling off work due to illness, but Carpenter still provided her manager with documentation. (*Id.* ¶ 30). Carpenter's doctor had to perform multiple tests as her condition worsened, causing her to miss an additional two weeks of work. (*Id.* ¶¶ 32-33). Throughout these two weeks, Carpenter provided all doctor's notes to Human Resource Representative, Judith Lyttle ("Lyttle"), via email. (*Id.* ¶ 34).

After a week's worth of testing, Carpenter's doctor informed her that Lyttle had called their office to confirm Carpenter's illness and symptoms. (*Id.* ¶35). Carpenter's doctor further informed Lyttle that they refrained from sharing information due to HIPPA. (*Id.* ¶ 36). Upon refusal, Lyttle became aggressive and rude to Carpenter's doctor. (*Id.* ¶ 37). Subsequently, Carpenter made a complaint to Human Resources regarding Lyttle's behavior on or about June 24, 2019. (*Id.* ¶ 38). However, SAE never responded. (*Id.* ¶ 40). On or about that same date, Carpenter received an email from SAE that they were no longer keeping Tier II employees, but she was assured by Rob McKinney ("Defendant McKinney"), President of Pacific Operations for SAE, that she would keep her position and seniority as a Tier I employee. (*Id.* ¶¶ 41-42).

To help manage the growing cost of treatment for Carpenter's Crohn's Disease, she wanted to apply for Medicaid and needed a verification of income from SAE. (*Id.* ¶¶ 48-50). Carpenter attempted to reach out to management and a Human Resources Representative on five occasions for a verification of income but struggled to receive proper documentation from SAE. (*Id.* ¶¶ 52-62). In July 2019, Plaintiff received a write-up from SAE for insubordination as a result of her consistent follow-ups regarding the verification of income. (*Id.*). Later, SAE stripped Carpenter of her access to company emails. (*Id.* ¶¶ 63-66). Eventually, Carpenter's work environment began

2

to deteriorate, and it was strongly believed that she was being targeted because of her Crohn's Disease. (*Id.* ¶¶ 66-73).

Carpenter was set to return to work on or about December 7, 2019. (*Id.* ¶ 74). She emailed Lyttle to confirm that date but did not receive an adequate response. (*Id.* ¶¶ 75-79). On or about December 5, 2019, Carpenter received an email that she could not return to her position as a Customer Service Representative, but that there was another job available in another department with less pay and less hours. (*Id.* ¶ 85). To Plaintiff's surprise, she had relied on prior communication with Defendant McKinney that she would retain her position and seniority upon returning to work. (*Id.* ¶ 89). Carpenter emailed SAE explaining that this offer was unacceptable and asked if SAE would oppose Unemployment. (*Id.* ¶ 91). SAE responded that Carpenter's subsequent email acted as her resignation letter when it clearly was not. (*Id.* ¶¶ 92-94). Carpenter attempted to return to work but was forced into a completely different position with substantially less pay and hours. (*Id.* ¶ 95). As a result of SAE's actions, Plaintiff filed her Complaint before this Court on February 8, 2021.

### III.    THE COURT HOLDS PERSONAL JURISDICTION OVER SAE

#### A. Ohio's Long-Arm Statute

"Where a motion to dismiss for lack of personal jurisdiction is decided on written submissions [the] court must view all of the pleadings and affidavits in a light most favorable to the plaintiff." *Retail Serv. Sys., Inc. v. Mattress By Appointment, LLC*, 210 F. Supp. 3d 916, 923 (S.D. Ohio 2016) (citing *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988)). To establish personal jurisdiction, a plaintiff can "establish with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Id.* (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). "Personal jurisdiction can

be "general" or "specific" depending on the nature of the defendant's contact with a state." *Williams v. Dunn,* No. 16-cv-374, 2016 WL 7210922, at *2 (S.D. Ohio Dec. 13, 2016) (citing *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002)).

To establish personal jurisdiction, a plaintiff must demonstrate that (1) Ohio's long-arm statute has been satisfied and (2) exercising jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment." *Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir.2012). Ohio's long-arm statute, provides "a court may exercise personal jurisdiction over a person who acts directly by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this state . . ." O.R.C. § 2307.382(A)(1).

First, SAE argues that Carpenter has not pled facts in support of jurisdiction or venue and that "Plaintiff's Complaint does not allege that any of [SAE's] actions related to this case occurred in Ohio." (Doc. No. 9, PageID 53). However, A complaint does not need to have detailed factual allegations and must give the defendant fair notice of what claim is being brought against them. *See Wilson v. Ford Motor Co.,* No. 1:19-CV-2238, 2019 WL 5864822, at *2-3 (N.D. Ohio Nov. 8, 2019). Carpenter's Complaint alleges that she worked from home in Ohio on behalf of SAE and the discriminatory events that gave rise to the claims for relief occurred in Ohio. (Doc. No. 1, ¶¶ 14-16). SAE's argument that the Court can dismiss Carpenter's Complaint on its face is misplaced.

Secondly, SAE has transacted business in Ohio when they knowingly chose to enter into an employment agreement with Carpenter to provide services on their behalf. The Ohio Supreme Court has held that "transacting any business" is to be interpreted broadly. *See Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.,* 559 N.E.2d 477, 480 (Ohio 1990). Cases involving whether a nonresident defendant "transacted business" in Ohio "have reached their results on

4

highly particularized fact situations, thus rendering any generalization unwarranted." *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc*. (1994), 68 Ohio St.3d 181, 184, 624 N.E.2d 1048. "With no better guideline than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio, the court must, therefore, rely on a case-by-case determination." *Id.* At 185. The phrase "transacting any business" means "to carry on business" or "to have dealings", and has a broader meaning than the word "contract." *Wood v. 1-800-Got-Junk?, LLC,* No. 2:06-CV-117, 2007 WL 895008, at *3 (S.D. Ohio Mar. 22, 2007). The definition of a "transaction" means "an action or a set of actions occurring between two or more persons relating to the conduct of business, commercial, or government." O.R.C. § 1306.01. A physical presence in Ohio is not required for personal jurisdiction to exist over a nonresident defendant. *1-800-Got-Junk?,* 2008 WL 895008, at *3.

      Here, SAE simply wishes to argue that a remote employee could not possibly be considered "transacting business". On the contrary, the employment agreement between the parties acted as a transaction between two or more persons that related to the conduct of SAE's business. Specifically, the job description provided by SAE states that Carpenter would be responsible for incoming calls for customers, processing reservations and changes, making alternative transportation arrangements, and resolving problems, etc. (Doc. No. 9, Ex. B). These responsibilities as an employee, working on behalf of SAE, were in the furtherance of conducting business operations. *See ALTA Analytics, Inc. v. Muus,* 75 F. Supp. 2d 773 (S.D. Ohio 1999) (the Court found that it had personal jurisdiction over an individual who contracted for employment with an Ohio corporation and performed duties on that corporation's behalf inside and outside of Ohio.). SAE then directed extensive communications towards Carpenter via telephone and email,

in furtherance of business operations. The fact that Plaintiff was remote and SAE holds no physical presence in Ohio does not preclude a finding that it transacted business in this state.

### B. Due Process

"The foundation of personal jurisdiction due process analysis is that when the defendant is not physically present in a forum, it must have 'certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" *R.D. Marks Consulting, Inc. v. Astra Holdings, LP,* No. 5:08CV2862, 2009 WL 1362972, at *8 (N.D. Ohio May 14, 2009) (quoting *Int'l Shoe v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Specific jurisdiction exists when "a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Sixth Circuit has established a three-part test to determine whether specific jurisdiction exists: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Dunn,* 2016 WL 7210922 at *2. (citing *Cadle Co. v. Schlichtmann*, 123 Fed.Appx. 675, 677 (6th Cir. 2005)).

    i. **_Defendants have purposefully availed themselves to the privilege of acting in the state of Ohio._**

Minimum contacts exist between Defendants and Ohio that satisfy the purposeful availment requirement. "Purposeful availment is present where the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum state." *Beydoun v. Wataniya Rests. Holding, Q.S.C.,* 786 F.3d 499,

6

505-06 (6th Cir. 2014). Generally, "purposeful availment is something akin to deliberate[ly] undertaking to do, or cause an act, or thing to be done . . . or conduct which can be properly regarded as a prime generating cause of the effects resulting in . . . something more than a passive availment of [opportunities]." *R.D. Marks Consulting, Inc. v. Astra Holdings, LP,* No. 5:08CV2862, 2009 WL 1362972, at *8 (N.D. Ohio May 14, 2009) (internal citations omitted).

SAE deliberately engaged in significant activities within Ohio. There was a mutual understanding between the parties that Carpenter would be working from Ohio when SAE chose to enter into an employment agreement with Carpenter. This suggests that SAE had some discussion as to what geographical area Carpenter would be providing her services to SAE, and further that they were aware that Carpenter would be conducting business in Ohio on their behalf. SAE extensively communicated with and contacted Carpenter in her home located in Ohio, and such communications were directed towards Ohio. *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 722 (6th Cir.2000) ("when a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio). This activity by SAE was continuous for more than a year. SAE should have known that "purposefully availing" themselves of Carpenter's employment in Ohio may potentially have consequences in Ohio.

SAE argues that jurisdiction cannot exist for the fact that Carpenter is their only contact or employee with Ohio. However, a single act may meet the purposeful availment requirement. *Astra Holdings*, 2009 WL 1362972, at *8. In this case, SAE has committed multiple acts towards Ohio, and Carpenter's employment agreement should have provided a fair warning that they may be hauled into court in Ohio.

### ii. *Plaintiff's cause of action arises from Defendants' activity.*

The premise of Carpenter's Complaint is her flare-up as a result of Crohn's Disease in Ohio that prevented her from working. "[I]f a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Tyler v. Sento Corp.,* No. 5:08 CV 1047, 2008 WL 4999985, at *6 (N.D. Ohio Nov. 25, 2008). SAE's discriminatory and retaliatory actions are not only related to Carpenter's disability during her time of employment, but also arose from Carpenter's struggle to work with her disability. SAE's actions were the direct and proximate cause of Carpenter being removed from her position, receiving a job with less hours and pay, and being pushed out of the company. Moreover, the operative facts of this controversy are related to the obligations of the employment agreement. It is unjust for SAE to seek out employees outside of Florida for their benefit to then avoid responsibility for retaliatory actions upon their employees.

### iii. *Jurisdiction over Defendants is reasonable.*

Generally, if a court finds the first two elements of the *prima facie* case, then an inference arises that the third element of reasonableness is also present. *Astra Holdings, LP,* 2009 WL 1362972, at *12. There are several factors that a court may consider in determining whether personal jurisdiction is reasonable, such as the burden is on the Defendants, the interest of the forum state, and the plaintiff's interest in obtaining relief. *Id.*

The burden on SAE is minimal as they are more than financially capable of traveling to Ohio. More importantly, the pandemic has been instrumental in highlighting the benefits of modern technology, and any potential travel may be alleviated through virtual appearances. Moreover, with the exception of a potential settlement conference, final pretrial, and jury trial, this Court generally conducts its hearings and conferences via telephone, which SAE can certainly

8

attend from Florida. Additionally, Ohio has a strong interest in keeping this matter within this state, as Ohio has an interest in making sure that its citizens are treated fairly and afforded access to the proper courts if it is apparent that they have not been treated fairly. *Id.* at *13. Lastly, Carpenter has an interest in obtaining damages owed to her by SAE in Ohio. Jurisdiction in Ohio is more than reasonable.

## IV. VENUE

28 U.S.C. §1391(b) provides that a civil action may be brought in: (1) a judicial district where the defendant resides; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) any judicial district in which any defendant is subject to the court's personal jurisdiction.

Carpenter has already established this Court holds personal jurisdiction over SAE based upon SAE's extensive contact and actions towards Carpenter. Indeed, a substantial part of the events or omissions that give rise to Carpenter's claims occurred in Ohio, where she resided when SAE discriminated against her, reduced her pay and hours, and terminated her employment. Therefore, venue is proper.

SAE argues that transfer of venue is proper because potential witnesses and SAE's employees reside in Florida, and relevant documents are kept in Florida. *See* Doc. No. 9 at 11. Nonetheless, "a generalized assertion by a defendant that witnesses reside in, and documents are located in [the requested venue], the proposed transferee district is generally insufficient to support a change of venue. Rather, the defendant must show a specific hardship involved in transporting documents to the plaintiff's chosen district, and must show that witnesses are unwilling to attend a trial in that forum." *Sento Corp.*, 2008 WL 4999985, at *10. SAE's assertion that venue should reside in Florida because witnesses are located within that state and that any relevant documents

reside in the state of Florida is not a sufficient reason for a transfer of venue. Nor can SAE illustrate any hardship in having to transport documents from Florida to Ohio because a legitimate hardship does not exist. The pandemic has allowed cases to proceed efficiently via electronic means. Witnesses can appear remotely through telephone or videoconferencing, and SAE can produce documents through email, DropBox, or some other electronic means. SAE's attempt to shift their inconveniences to another party is not a valid reason to transfer venue.

## V. CONCLUSION

Carpenter worked for SAE in Ohio. SAE knew she was in Ohio and specifically hired her with knowledge and consent that she would be working from Ohio. SAE then discriminated against Carpenter, reduced her hours and pay, stripped her of her job, and terminated her employment in Ohio. SAE now wants to avoid repercussions from its actions in Ohio by claiming that it would somehow be difficult for them to appear remotely or send documents electronically from Florida. In today's age of technology – especially in light of how litigation in this Court has proceeded over the last 15 months – SAE's reasons are simply insufficient.

For these reasons, Carpenter asks this Court to deny SAE's Motion as personal jurisdiction and venue in Ohio are proper. Ohio has an interest in protecting its citizens from outside corporations like SAE.

Respectfully submitted,

/s/ Matthew G. Bruce
Matthew G. Bruce (0083769)
Brianna R. Carden (0097961)
**THE SPITZ LAW FIRM, LLC**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
*Attorneys for Plaintiff Jacquelyn Carpenter*

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing was this 8th of June, 2021 upon the following through the Court's CM/ECF system:

    Pamela S. Krivda
    pkrivda@taftlaw.com
    Rachel Smoot
    rsmoot@taftlaw.com
    TAFT STETTINIUS & HOLLISTER LLP
    65 East State Street, Suite 1000
    Columbus, OH 43215
    Telephone: (614) 221-2838
    Facsimile: (614) 221-2007

                                                           /s/ *Matthew G. Bruce*