## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **JACQUELYN CARPENTER,** | ) | **CASE NO. 2:21-CV-00568-SSM-CMV** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE SARAH D. MORRISON** |
| | ) | |
| **v.** | ) | **Magistrate Judge Chelsea Vascura** |
| | ) | |
| **SOUTHERN AIRWAYS EXPRESS,** | ) | |
| **ROB MCKINNEY & SUSAN NEFF,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

SAE is not unsympathetic to Plaintiff and any medical condition she may have; however, Plaintiff cannot manufacture personal jurisdiction based on events that were not instigated by or otherwise involve SAE.  Plaintiff filed suit in Ohio purely for her own convenience.  To order SAE to remain here and litigate the case would not only violate Due Process but also public policy.

Plaintiff dedicates a large amount of her responsive briefing to a persuasive recitation of the facts.  Yet Plaintiff fails to mention that, when SAE initially hired her in February 2018, she was hired as a customer service representative in the Pittsburgh airport, which was not a virtual[1] position.  Decl. of Margaret Thurber ("Thurber Decl.") ¶ 3.  For a brief period, Plaintiff worked both in person at the Pittsburgh airport and in the Call Center, which is entirely a virtual position. *Id.* ¶ 4.  At Plaintiff's own request, she was eventually moved fulltime to the Call Center. *Id.* ¶ 5. According to SAE policy and the Employee Handbook distributed to all SAE employees, Call Center employees may work in any location but are required to have a backup location within an

---

[1] A "virtual position," as the term is used herein, is one in which the employee works from home or other location of his or her choosing.  There is no brick-and-mortar location for the job.  Employees may work from anywhere they have reliable internet connections and can move to any other locations at will.

hour's driving distance in case of internet connectivity issues.  *Id.* ¶¶ 6, 8.

## I.  PLAINTIFF FAILS TO MEET HER BURDEN THAT THIS COURT HAS PERSONAL JURISDICTION OVER SAE.

It is unclear why Plaintiff refers to the Rule 12(b)(6) standard in her responsive briefing Dkt. 13 at 4; regardless, Plaintiff has failed to meet even her minimal burden of establishing personal jurisdiction.  *See, e.g., Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008).  Plaintiff's main argument that jurisdiction is appropriate is that her residence is in Steubenville, Ohio.  Compl. ¶ 1.  Yet, Plaintiff conveniently omits that she originally was hired to work for SAE in Pennsylvania, where SAE has a regional location.  Steubenville, which is located near the border between Ohio and Pennsylvania, is merely a handful of miles from West Virginia and less than an hour's drive from Pittsburgh.  Indeed, Plaintiff used to work in Pittsburgh, purportedly commuting from her Steubenville residence, but she could still work in either Pennsylvania or West Virginia in case of an emergent situation.  Compl. ¶ 1; Thurber Decl. ¶ 8.  Instead, based purely on her personal address, and for no reason connected to SAE's operations, Plaintiff demands Ohio as her forum of choice.

Admittedly, while the Ohio Supreme Court has held that the "transacting any business" prong of § 2307.382(A) is to be interpreted broadly, *Kentucky Oaks Mall co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (Ohio 1990), "[t]wo factors help determine whether an out-of-state defendant, in a contractual dispute, "transacted business" within the meaning of the Ohio Long-Arm Statute." *Paglioni & Assocs., Inc. v. WinnerComm, Inc.*, No. 2:06-cv-00276, 2007 WL 852055 at *9 (S.D. Ohio Mar. 16, 2007).

> The first factor is whether the out-of-state defendant initiated the business dealing.  If the defendant reached out to the plaintiff in the forum state to create a business relationship, the defendant transacted business in the forum state.  The second factor is whether the parties conducted their negotiations or discussions in the forum

2

> state or with terms affecting the forum state.  If the parties negotiated in the forum state with provisions affecting the forum state, the defendant transacted business in the forum state.  In addition to these two factors, the plaintiff still must demonstrate that there is a substantial connection between the defendant and the forum state.

*Id.* (internal citations omitted).

*First*, SAE did not initiate the business dealing.  Plaintiff sought employment from SAE at SAE's Pittsburgh location.  Thurber Decl. ¶¶ 2-3.  Although  Plaintiff ultimately ended up working in Ohio, from her own home and at her own request, out-of-state SAE did not reach out to Plaintiff to create a business relationship in Ohio such that SAE could be found to have transacted business in this state.

*Second*, the Parties did not conduct their negotiations or discussions related to the purported relationship in Ohio.  "[A]s a general rule, the use of interstate lines of communication such as mail and telephones does not automatically subject a defendant to the jurisdiction of the courts in the forum state." *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 161 (S.D. Ohio Nov. 29, 2012).  "[M]erely directing communications to an Ohio resident for the purpose of negotiating an agreement, without more, is insufficient to constitute 'transacting business.'"  *Id.* (citation omitted).  All discussions from SAE were initiated in Florida or by individuals working at the direction of those located in Florida.  Further, no terms of the resultant agreement (i.e., Plaintiff's employment at the Pittsburgh airport) likely would have affected Ohio, given that Plaintiff first worked in Pittsburgh and then worked fully remote from her residence.  The Parties did not negotiate in the forum state, and no provisions affected the forum state.  Accordingly, in hiring Plaintiff, SAE did *not* transact business in the forum state.

*Third*, Plaintiff cannot demonstrate that there is a substantial connection between SAE and the forum state.  In order to find personal jurisdiction pursuant to the Ohio Long Arm Statute,

3

70493396v4

"there must be additionally be some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state." *Yan*, 288 F.R.D. at 161. As more fully set forth in Defendants' Motion to Dismiss, SAE has no continuing obligation connecting it to Ohio. SAE is a company based entirely in Florida, providing regional flights in select portions of the United States. SAE does not have a brick-and-mortar location in Ohio; does not operate any flights to or from Ohio; does not direct any employees to travel to Ohio; and does not attend trade shows or expositions in Ohio. Thus, by any measure, SAE does not transact business in Ohio.

**II.**         **A SINGLE REMOTE EMPLOYEE IS NOT SUFFICIENT TO ESTABLISH PERSONAL JURISDICTION OVER AN OUT-OF-STATE EMPLOYER.**

Even if Plaintiff's singular employment agreement with SAE could be considered "transacting business," to find personal jurisdiction here would be a violation of Due Process and contrary to public policy. In *Burger King Corp. v. Rudzewicz*, the Supreme Court clearly stated that the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." 471 U.S. 462, 475 (1985). "The unilateral actions of an employee do not create minimum contacts in a forum for his employer unless there is evidence that the employer purposefully availed itself of the benefits and protections of the laws of the forum. In other words, 'the plaintiff cannot be the only link between the defendant and the forum.'" *Id.* at 478. A defendant establishes an ongoing relationship with a resident of a forum state when contractual obligations create 'a realistic and foreseeable impact upon the commerce of the forum state.'" *Douglas v. Mod. Aero, Inc.*, 954 F. Supp. 1206, 1213 (N.D. Ohio 1997) (citation omitted). Here, no such contractual obligations exist. SAE employed Plaintiff originally at SAE's Pittsburgh location and subsequently permitted her to

4

work fully remote.  Plaintiff invokes her choice of residence to dictate the forum of this action. Unfortunately for Plaintiff, she is the only link between Defendants and the forum.

While not of the Sixth Circuit, this Court may find the decision in *Perry v. Nat'l Ass'n of Home Builders of U.S.*, Civil Action No. TDC-20-0454, 2020 WL 5759766 (D. Md. Sept. 28, 2020) as particularly instructive.  In *Perry*, the plaintiff, a former Executive Assistant to the defendant's CEO, alleged discriminatory discharge and breach of contract.  *Id.* at *1.  The defendant was a Nevada nonprofit corporation with its principal place of business in Washington, D.C., while the plaintiff was a resident of Maryland.  *Id.*  The plaintiff alleged that she was required to assist at "all hours" and that "she conducted 'a majority' of her work from her home in Maryland."  *Id.*  She further alleged that the defendant derived a substantial portion of its business from her work there because she was the CEO's administrative assistant and that, by nature of her performing significant work duties from her home, the defendant "conducted business" in Maryland.  *Id.* at *4.  Despite the defendant's even holding a conference in Maryland for four days the previous year, the *Perry* court found that "[t]hese contacts are insufficient to satisfy due process."  *Id.*  According to the court:

> In addressing whether a court may exercise specific jurisdiction over a nonresident employer in a dispute involving remote work by an employee in the forum state, courts may find purposeful availment where the employer *intentionally directed contact with the forum state*, such as through some combination of affirmatively recruiting the employee while a resident of the forum state, contracting to have the employee work from the forum state, having the employee attend meetings with business prospects within the forum state, and supplying the employee with equipment to do work there.

*Id.* at *4 (emphasis added).  The court went on to state "[i]n remote-work cases, however, a defendant's mere knowledge that an employee happens to reside in the forum state and conduct some work from home does not constitute purposeful availment."  *Id.* at *5.

5

70493396v4

Just as with Perry, Plaintiff here cannot demonstrate that SAE intentionally directed contact with Ohio so as to give rise to "purposeful availment." There was no affirmative recruitment of Plaintiff in Ohio, no contract to have her work from Ohio, and no meetings of Plaintiff with business prospects in Ohio. Plaintiff's location was purely incidental to her employment. *See also Fields v. Sickle Cell Disease Ass'n*, 770 F. App'x 77 (4th Cir. 2019) (finding no jurisdiction where the employee made the "unilateral decision" to reside in North Carolina and the employer merely accommodated the employee); *Callahan v. Wisdom*, No. 3:19-CV-00350 (KAD), 2020 WL 2061882 at *12 (D. Conn. Apr. 29, 2020) (holding no jurisdiction where employee was hired as a consultant and the employee's location in Connecticut was "purely incidental" even though it was known to the employer); *Bertolini-Mier v. Upper Valley Neurology, P.C.*, No. 5:16–cv–35, 2017 WL 4081901 (D.Vt. Sept. 13, 2017) (finding the employer's "knowledge and facilitation of occasional remote work" was an "accommodation" but "not a purposeful effort" to have the work conducted in the forum state); *Listug v. Molina Info Sys., LLC*, Civil No. 14–386 (DWF/SER), 2014 WL 3887939 at *3 (D. Minn. Aug. 8, 2014) ("An agent's decision to work from home in the forum state generally does not bind an entity to personal jurisdiction in that state where the purpose of the arrangement is merely for the agent's personal convenience").

As Plaintiff noted in her responsive brief, "[t]he pandemic has allowed cases to proceed efficiently via electronic means." Dkt. 13 at 4. Yet there is also no question that the pandemic has changed the world's outlook on remote work. According to a recent survey, 74% of professionals responded that "they believe remote work will become the new normal." Ashira Prossack, *5 Statistics Employers Need to Know About the Remote Workforce*, FORBES (Feb. 10, 2021, 8:51PM), https://www.forbes.com/sites/ashiraprossack1/2021/02/10/5-statistics-employers-need-to-know-about-the-remote-workforce/?sh=66eab463655d. "Large corporations like Twitter and

6

70493396v4

Slack have already announced that they will give all employees the option to work from home permanently, and Salesforce just announced their plan for hybrid work." *Id.* Further, of those surveyed, "[m]ore than half of the employees surveyed said they prefer working in a fully remote environment." *Id.* Indeed, benefits such as remote work are already finding their way to the top of the list of requirements for new hires and attracting top recruits. *Id.* Undoubtedly, the world of office employment is set to evolve imminently and already has to an extent. Thus, to determine that all employers with employees working remotely have "purposefully availed" themselves of those jurisdictions in which their employees choose to be located, temporarily or permanently, would neither follow the spirit of *Rudzewicz* nor be in the best interests of public policy.

For the reasons set forth above as well as in its Motion to Dismiss, SAE respectfully requests this Court dismiss this case for lack of personal jurisdiction, or in the alternative, transfer the case to the United States District Court for the Southern District of Florida.

Respectfully submitted,

*/s/ Pamela S. Krivda*
Pamela S. Krivda (0041133)
pkrivda@taftlaw.com
Rachel Smoot (0092296)
rsmoot@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
65 East State Street, Suite 1000
Columbus, OH  43215
Telephone: (614) 221-2838
Facsimile: (614) 221-2007

*Attorneys for Southern Airway Express*

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was this 23rd day of June, 2021 upon the

following through the Court's CM/ECF system:

Matthew G. Bruce
Matthew.bruce@spitzlawfirm.com
Brianna R. Carden
Brianna.carden@spitzlawfirm.com
THE SPITZ LAW FIRM
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax: (216) 291-5744

/s/ Pamela S. Krivda

70493396v4