UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JACQUELYN CARPENTER,

        Plaintiff,        :

  v.                                    Case No. 2:21-cv-568
                                         Judge Sarah D. Morrison
                                         Magistrate Judge Chelsey M.
SOUTHERN AIRWAYS             Vascura
EXPRESS, *et al.*,               :

        Defendants.

**OPINION AND ORDER**

This matter is before the Court for consideration of the Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue filed by Defendants Southern Airways Express ("SAE"), Rob McKinney, and Susan Neff. (Mot. to Dismiss, ECF No. 9.) Plaintiff Jacquelyn Carpenter responded (Resp., ECF No. 13) and Defendants filed their reply (Reply, ECF No. 15). This matter is ripe for consideration. For the reasons set forth below, Defendants' Motion is **GRANTED**.

**I.    BACKGROUND**

    **A.    Parties**

Ms. Carpenter, an Ohio resident, is a former employee of SAE. (*Id.*, ¶¶ 1, 19).

"SAE is a scheduled service commuter airline, serving nearly three dozen cities across the United States." (Jacobs Decl., ¶ 3, PAGEID # 61.) SAE represents that it "is a Delaware limited liability company, and Florida is its principal place of business." (Mot. to Dismiss, 4–5. *See also* Jacobs Decl., ¶ 2.) SAE does not operate

any physical location in Ohio or provide any flights to or from Ohio. (Jacobs Decl., ¶¶ 7, 8.)

During the time period relevant to the Complaint, Mr. McKinney, a resident of Hawaii, was SAE's President of Pacific Operations and Ms. Neff, a resident of Tennessee, was SAE's Chief Executive Officer. (Compl., ¶¶ 4–5, 9–10.).

B.  Ms. Carpenter's employment with SAE

Ms. Carpenter worked for SAE as a Customer Service Representative in the company's call center. (*Id.*, ¶ 22.) SAE's call center employees are responsible for, *inter alia*, processing new and changed reservations and handling customer inquiries. (Jacobs Decl., ¶ 5.) While the call center is a single department within SAE, call center employees are "virtual employees who work from their own homes across the United States. There is no brick-and-mortar" SAE call center location. (*Id.*, ¶ 6. *See also* Mot. to Dismiss, Exh. B, PAGEID # 63–66 ("JOB TITLE: Call Center Virtual Work from Home").) Ms. Carpenter worked from her home in Ohio. (Compl., ¶ 14.)  Though she regularly communicated with other SAE employees, including on occasion Mr. McKinney and Ms. Neff, "[a]ll of [Ms.] Carpenter's contacts and interactions with SAE were virtual[;]" *i.e.*, by telephone or email. (*See e.g., id.*, ¶¶ 34, 41–42, 53. *See also* Jacobs Decl., ¶ 5.)

C.  Ms. Carpenter's suit against Defendants

Ms. Carpenter brings suit alleging violations of federal and state employment laws. (Compl.) Defendants now move for dismissal of all claims for lack of personal jurisdiction and improper venue. (Mot. to Dismiss.) Because the Court finds that it

2

lacks personal jurisdiction over Defendants, it need not and does not address the venue arguments.

## II. STANDARD OF REVIEW

Rule 12(b)(2) provides for dismissal of a lawsuit for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of proving that jurisdiction exists, *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991), "over each defendant independently." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (quoting *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006)). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458. If a court rules on a Rule 12(b)(2) motion prior to trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005) (citation omitted). "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 434 (6th Cir. 2006) (citation omitted). Here, no party has requested further discovery or an evidentiary hearing, and the Court concludes that neither is necessary to rule on the Defendants' Motion.

When a court resolves a Rule 12(b)(2) motion based on "written submissions and affidavits . . . , rather than resolving the motion after an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *Theunissen*, 935 F.2d at 1458) (cleaned up). A plaintiff can meet the burden by "establishing with reasonable particularity sufficient contacts between [it] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). In the absence of an evidentiary hearing, courts apply the *prima facie* standard weighing the evidence in the light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Nonetheless, the court may consider a defendant's undisputed factual assertions. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). If "there does not appear to be any real dispute over the facts relating to jurisdiction, the *prima facie* proposition loses some of its significance." *Id.* (internal quotations and citation omitted).

In support of their Motion to Dismiss, Defendants filed a sworn declaration of Bruce A. Jacobs, Secretary/Treasurer and Chief Integration Officer at SAE.[1] (Jacobs Decl., ¶ 1.) Plaintiff has not submitted any affidavits or declarations.

## III. ANALYSIS

Where, as here, jurisdiction over a case is based upon a federal question, personal jurisdiction over a defendant exists only if (1) "the defendant is amenable to service of process under the [forum] state's long-arm statute" and (2) "the exercise of personal jurisdiction would not deny the defendant[ ] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (internal quotation omitted) (alterations in original).

### A. Ohio's Long-Arm Statute

"Ohio's long-arm statute grants Ohio courts personal jurisdiction over a non-resident if its conduct falls within the nine bases for jurisdiction listed by the statute." *Conn*, 667 F.3d at 712. Ms. Carpenter asserts that Ohio's long-arm statute confers personal jurisdiction over Defendants (without distinguishing SAE from the individual Defendants), and points to one provision of the statute in particular: that "[a] court may exercise personal jurisdiction over a person who acts directly or by an

---

[1] Together with their Reply, Defendants also filed the sworn declaration of Margaret Thurber, SAE's Director of Human Resources. (ECF No. 16.) Ms. Thurber's declaration sets out additional facts about Ms. Carpenter's employment with SAE. Although Ms. Carpenter has not filed a formal objection to Ms. Thurber's declaration or the issues and argument newly raised in Defendants' reply brief, the Court declines to consider them. *See Ross v. Choice Hotels Int'l, Inc.*, 882 F. Supp. 2d 951, 958 (S.D. Ohio 2012) (Frost, J.) ("[t]his Court has explained time and again that 'a reply brief is not the proper place to raise an issue for the first time'" and collecting cases).

5

agent, as to a cause of action arising from the person's [t]ransacting any business in this state." Ohio Rev. Code § 2307.382(A)(1). Defendants argue that they are not subject to Ohio's long-arm statute because they did not transact any business within the state, did not direct any business towards Ohio, did not take any action in Ohio, and have no connection with Ohio other than one employee's self-selected address. Ms. Carpenter responds that jurisdiction is proper because Defendants knew Ms. Carpenter performed her work in Ohio and regularly directed communications toward the state.[2]

> Ohio's long-arm statute:
>
> [is] very broadly worded and permit[s] jurisdiction over nonresident defendants who are *transacting any* business in Ohio. "Transact," as defined by Black's Law Dictionary (5 Ed. 1979) 1341, " * * * means to *prosecute negotiations*; to carry on business; *to have dealings * * *. The word embraces in *its meaning the carrying on or prosecution of business negotiations* but it is a *broader term than the word 'contract' and may involve business negotiations* which have been either wholly or partly brought to a conclusion * * *." (Emphasis added.)

*Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 480 (Ohio 1990). The statute is "a broad statement of jurisdiction," so the Supreme Court advises that "[w]ith no better guideline than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio, [courts] must, therefore, rely on a case-by-case determination." *U.S. Sprint Commc'ns Co. P'ship v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048, 1052 (Ohio 1994).

---

[2] Ms. Carpenter also argues that Defendants sought employees from outside of Florida. (Resp., 8.) However, she offers no facts—sworn or otherwise—supporting this assertion.

6

Considering the undisputed facts of this case, even a broad interpretation of Ohio's long-arm statute fails to reach Defendants. As an initial matter, Ms. Carpenter makes no serious effort at demonstrating that either Mr. McKinney or Ms. Neff are subject to Ohio's long-arm statute. (*See* Resp., 4–6.) Absent an argument in favor of an alternative conclusion, the Court determines that neither Mr. McKinney nor Ms. Neff transacted business in Ohio.

Ms. Carpenter does argue that SAE transacted business in Ohio, relying heavily on a purported "employment agreement" between herself and SAE. But she did not produce any such agreement for the Court's review, or explain how or why the agreement is sufficient to establish that SAE was 'transacting business' in Ohio. Ms. Carpenter further argues that SAE directed business-related phone and email communications to her in Ohio. Ms. Carpenter was hired by SAE to work in a remote, or "virtual," position.  She does not assert that SAE exerted any control or expressed any preference over the location from which she worked—she could have been in Alabama, Alaska, Arizona, or Arkansas as easily as in Ohio. SAE's customers were similarly ignorant and agnostic about Ms. Carpenter's location. On these facts, the Court cannot conclude that SAE "transacted business" in Ohio.

Ms. Carpenter's invocation of *ALTA Analytics, Inc. v. Muuss*, 75 F. Supp. 2d 773 (S.D. Ohio 1999) (Marbley, J.) does not save her claims. In *ALTA,* an Ohio corporation brought suit against a nonresident former employee. This Court held that the employee was subject to service under Ohio's long-arm statute because he transacted business in the state—namely, he entered into a written employment

7

agreement that expressly provided that it was governed under Ohio law, he came to Ohio for sales and training meetings, and he made work-related sales contracts in Ohio. *Id*. at 779. These facts are wholly distinct from those now before the Court.

Ms. Carpenter has failed to show that this Court's exercise of personal jurisdiction over Defendants comports with Ohio's long-arm statute.

### B.  Due Process Clause

Even assuming, *arguendo*, that Defendants were subject to service under Ohio's long-arm statute, the exercise of personal jurisdiction over them would not comport with the Due Process Clause. To satisfy due process, a court's exercise of its power over an out-of-state defendant must "not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Due Process Clause of the Fourteenth Amendment recognizes two types of personal jurisdiction—general and specific—either one of which is adequate to confer jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

"If a court has general jurisdiction over a defendant, it can adjudicate any claims involving that defendant, regardless of where the cause of action arose." *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 849 (N.D. Ohio 2018). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the

8

corporation is fairly regarded as at home[,]" such as the corporation's place of incorporation and its principal place of business. *Goodyear*, 564 U.S. at 924. General jurisdiction may also exist over an out-of-state corporation when its contacts with the forum state "are so continuous and systematic as to render it essentially at home in the forum state." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct.1549, 1558 (2017). However, "[m]aintaining extensive operations within a state alone does not satisfy the general-jurisdiction exception." *Maclin*, 314 F. Supp. 3d at 849 (noting that the Supreme Court found in *BNSF Ry. Co.*, that, although BNSF operated one of its automotive facilities in Montana, had more than 2,000 Montana employees, and had more than 2,000 miles of Montana railroad tracks, it was not subject to general jurisdiction in Montana).

"Specific jurisdiction refers to jurisdiction over claims arising from or related to a defendant's contacts with the forum state." *Id*. The Sixth Circuit has "promulgated a three-prong test that not only guides the determination of whether specific jurisdiction exists, but also protects the due process rights of a defendant[:]"

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Intera Corp.*, 428 F.3d at 615 (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). "Failure to meet any one of the three prongs means that personal jurisdiction may not be invoked." *Maclin*, 314 F. Supp. 3d at 849.

9

Here, this Court lacks general jurisdiction over the Defendants. Ms. Carpenter alleges that Mr. McKinney and Ms. Neff are residents of Hawaii and Tennessee, respectively. (Compl., ¶¶ 4, 9.) Similarly, she alleges that SAE is "a foreign-incorporated, for-profit company from the state of Florida that conducts business within the state of Ohio." (*Id.*, ¶ 2.) However, as discussed, the mere allegation that a company does business in Ohio does not confer general jurisdiction over that company, absent a showing of operations or contacts that are "so substantial and of such a nature as to render the corporation at home in [this] State." *BNSF Ry. Co.*, 137 S. Ct. at 1558 (internal quotation marks omitted). *See also Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) (explaining that "the mere existence of a contract between [the defendant] and an Ohio citizen for seventeen months is insufficient to confer personal jurisdiction over [the defendant]"). Ms. Carpenter has made no such showing.

Turning to specific jurisdiction, under *Southern Machine*, the Court first looks to whether Defendants purposefully availed themselves of the privilege of acting in Ohio. "In the Sixth Circuit, the emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." *Beydoun*, 768 F.3d at 605 (quoting *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006)). "[T]he issue is not the quantity, but the quality of a defendant's contacts with the forum state." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 901 (6th Cir. 2017) (citations omitted). Contacts that are "random, fortuitous, or attenuated" are not considered

10

to be high-quality. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). *See also Calphalon*, 228 F.3d at 722 (finding that "the actual course of dealings between the parties demonstrate[d] that [the defendant's] contacts with Ohio were purely 'fortuitous' and 'attenuated'").

To this Court's knowledge, the Sixth Circuit has not considered the question of personal jurisdiction over a nonresident employer of a fully-remote employee. However, in *Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499 (E.D. Ky. 2019), our sister court determined that such an employer was subject to personal jurisdiction in the remote employee's state. In so holding, the court considered several factors, including:

> whether (1) the defendant solicited the employment of the plaintiff in the forum state; (2) the plaintiff worked predominantly from within the forum state; (3) the plaintiff was a high-level employee in the defendant's business; (4) the plaintiff signed the employment contract in the forum state; (5) the defendant had knowledge of, and "facilitated," the plaintiff's remote employment; and (6) the work the plaintiff performed in the forum state advanced the defendant's business interests in the forum state.

*Id.* at 511 (citation omitted). Even though Rag-O-Rama did not sell merchandise or operate stores in Kentucky, the company's knowledge, acceptance, and support of Ms. Hall's desire to work in Kentucky was enough to establish minimum contacts with the state. *Id.* at 510. Rag-O-Rama "aggressively sought out" Ms. Hall, while she was in Kentucky, for an executive-level position. *Id.* at 510. Ms. Hall's arrangement to work from Kentucky "was specifically bargained for in the negotiation of [her] employment contract." *Id.* at 510. Rag-O-Rama further

11

supported Ms. Hall's remote work by sending a computer, monitor, and cell phone to her residence in Kentucky for business use. *Id.* at 504.

A review of case law from other circuits reveals similar, case specific analyses. *See Cossart v. United Excel Corp.*, 804 F.3d 13, 16 (1st Cir. 2015) (finding that a nonresident employer purposefully availed itself of Massachusetts law where the employer recruited a Massachusetts resident to conduct sales work in Massachusetts with a contract stating that the work would occur in Massachusetts and provided office equipment to use while in Massachusetts) and *Stuart v. Churn LLC*, No. 1:19-CV-369, 2019 WL 2342354, at *5 (M.D.N.C. June 3, 2019) (finding that a nonresident employer purposefully availed itself of North Carolina law where the employer hired a North Carolina resident, reimbursed the employee's remote work-related phone and internet expenses, and expected the employee to expand the business into North Carolina by meeting with distributors there). But the result of the analysis can and does change when the facts change. For example, in *Fields v. Sickle Cell Disease Ass'n of Am., Inc.*, the Eastern District of North Carolina classified an employee's remote work, which was by her own decision and at her request, as "a unilateral decision that cannot be fairly attributed to the defendant as an attempt to avail itself of the privileges of conducting business in [the forum state]." 376 F. Supp. 3d 647, 653 (E.D.N.C. 2018), *aff'd*, 770 F. App'x 77 (4th Cir. 2019). Similarly, the District of Maryland recently held that an employee who conducted much of her work remotely from her Maryland home was engaged in "'unilateral activity' that d[id] not establish purposeful availment," even though the

12

remote work was known to and supported by her employer. *Perry v. Nat'l Ass'n of Home Builders of the U.S.*, No. TDC-20-0454, 2020 WL 5759766, at *5 (D. Md. Sept. 28, 2020). *See also Rosenberg v. Deutsche Bank AG*, No. 11-02200, 2012 WL 3744632, at *5 (D. Colo. May 22, 2012), adopted by No. 11-02200, 2012 WL 3744631 (D. Colo. Aug. 28, 2012) (finding that an employee's unilateral decision to relocate to the forum state did not establish an employer's minimum contacts with the state); *Phillips v. Persons Servs. Corp.*, No. 2:20-cv-2392-MSN-atc, 2021 WL 5277481, at *5 (W.D. Tenn. Mar. 31, 2021) (same); *Sciortino v. CMG Capital Mgmt. Grp., Inc.*, No. 16-11012, 2016 WL 4799099, at *6 (E.D. La. Sept. 14, 2016) (finding that an employer did not have minimum contacts with the forum state simply by hiring an employee who worked mainly from his home in that state).

    Here, a review of the facts and the *Rag-O-Rama* factors, compels the conclusion that the Defendants did not purposely avail themselves of the privilege of acting in Ohio. There is no allegation that SAE affirmatively recruited Ms. Carpenter, asked or required her to work from Ohio, came to Ohio to meet with her, supplied her with materials or equipment to remotely conduct her work from Ohio, or tasked her with extending SAE's business in Ohio. Similarly, there is no indication that Ms. Carpenter specifically bargained for the ability to work from Ohio. Ms. Carpenter's unilateral decision to reside in Ohio while working in a virtual role does not support the conclusion that Defendants engaged in any overt actions connecting them to Ohio. Defendants' contacts with Ohio are random,

13

fortuitous, and attenuated. Accordingly, this Court's exercise of personal jurisdiction over them would not comport with due process.

### IV. CONCLUSION

Defendants' Motion to Dismiss (ECF No. 9) is **GRANTED**. Ms. Carpenter's Complaint is **DISMISSED** without prejudice to refiling before the appropriate court. The Clerk is **DIRECTED** to **TERMINATE** this case from the docket records of the United States District Court for the Southern District of Ohio.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**